CITY OF ST. JOSEPH EX REL., THE CONSOLIDATED STONE COMPANY, A
CORPORATION, APPELLANT, v. PFEIFFER STONE COMPANY, T. W.
HACKETT, UNION INDEMNITY COMPANY OF NEW ORLEANS, RE-
SPONDENTS.

Kansas City Court of Appeals.   April 7, 1930.

*John C. Landis, Jr.,* and *John C. Landis III* for appellant.

*Alva F. Lindsay* and *Culver, Phillip & Voorhees* for respondents.

BLAND, J.—This is a suit on a contractor's bond in the penal
sum of $92,500. The case was tried before the court without the aid
of a jury resulting in a judgment in favor of defendants.

The facts show that the defendant, Hackett, entered into a con-
tract with the city of St. Joseph to erect a contagious hospital in
said city. Hackett furnished the bond in suit with the defendant,
Union Indemnity Company, as surety. Defendant, Pfeiffer Stone
Company of St. Joseph, took the sub-contract under Hackett to

furnish the stone to be used in the erection of the building. The Pfeiffer Stone Company in turn purchased the stone from the relator, the Consolidated Stone Company of Bedford, Indiana. This stone was furnished by the relator, cut, numbered and ready to be set in their proper places in the building. Hackett paid the Pfeiffer Stone Company the amount agreed upon between them for the purchase price of the stone except the sum of $358, which was not paid because Hackett was notified by the attorney for the relator not to pay the amount remaining due. The Pfeiffer Stone Company was to pay the relator the sum of $2960.40 for the stone but in fact paid only $144.57 of that amount, leaving a balance of $2815.83 due relator.

The material parts of the bond in suit read as follows:

"Now, therefore, the condition of this obligation is such that if the principal shall faithfully perform the contract on his part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and shall pay all persons for all material, lubricants, oil and gasoline used in or consumed in the construction of such work and for all labor performed in such work whether by subcontractor or otherwise, who have contracts *directly* with the principal for labor or material then this obligation shall be null and void; otherwise it shall remain in full force and effect."

The main question presented in this appeal is whether a bond given to secure the payment of materials furnished for use in a public building by persons "who have contracts *directly* with the principal for . . . material" can be construed and held to be a bond covering all material entering into the construction of the building, by whomsoever furnished.

It is claimed by relator that section 1040, Revised Statutes 1919, as amended (see Laws of 1925, p. 127) and section 1041, Revised Statutes 1919, should be read into the bond. Section 1040, as amended, places a duty upon the Board of Public Works, in letting the contract to Hackett, of requiring the execution of a bond by him which should "be conditioned for the payment of all material, lubricants, oil and gasoline used in or consumed in the construction of such work whether by subcontractor or otherwise." Section 1041 gives the right to certain persons to bring suit upon the bond described in section 1040.

It is also relator's contention that the purpose of the statute in requiring the bond was to afford materialmen, who furnished materials to go into such buildings as could not be subjected to mechanics' liens, with the same means of protection as is afforded in

the mechanics' lien law where the building or improvement is not of a public character and that relator would have been entitled to a mechanic's lien in this case if the building had not been of that character.

Relator cites many cases holding that the statutory provisions are to be read into bonds taken under the statute. [Fogarty v. Davis, 265 S. W. 879, 880; Zellars v. Surety Co., 210 Mo. 86, 92; State ex rel. v. Rubber Mfg. Co., 149 Mo. 181, 212; Henry Co. v. Salmon, 201 Mo. 138, 162, 163; Board of Education v. Fid. & Guaranty Co., 155 Mo. App. 109, 115.] There is nothing in these cases holding that a court can interpret plain language of a bond when there is no need for interpretation. In other words these cases do not hold that the courts may construe a bond to mean differently than expressly provided in the bond actually taken. As is well said in Pingrey on Suretyship and Guaranty, p. 170:

The measure of liability of sureties is fixed by the terms of the instrument they sign, and such undertaking cannot be enlarged or varied by judicial construction. Their undertaking will be construed as the words used are ordinarily understood."

Whether the surety is a compensated one or not, the rule applicable to the construction of bonds is that, for the purpose of ascertaining the meaning of the language used therein, and thus in determining the extent of the guaranty, the same rules of construction are to be applied as are applied in other instruments. [Kansas City to Use v. Youmans, 213 Mo. 151, 166, 167; Jobes v. Miller, 201 Mo. App. 45, 47.] Of course if it be a fact that the surety herein is a compensated surety the general rule applies which is, if there is any ambiguity in a written contract it will be construed most strongly against the person using the language giving rise to such ambiguity. [Union State Bank v. American Surety Co., 23 S. W. (2d) 1038, 1044; State to Use v. Cochrane, 264 Mo. 581.] However, there is no ambiguity in this bond. It provides in no uncertain terms that it covers persons "who have contracts *directly* with the principal for . . . material." As relator had no contract directly with Hackett, the contractor, the furnishing of material by it was not covered by the terms of the bond in question.

It is claimed that the language in question should be "construed in the light of the language used and the provisions contained in section 1040" and "the court must find the word 'directly' is used not meaning 'solely with the principal' but 'in privity with the principal;'" that the word "directly should be given the meaning "in a direct line and distinguished from indirect contracts or collateral agreements." It is quite plain that the bond is not capable of any such construction. Had the bond complied with the statute those having contracts with the subcontractors would be in privity

with the principal in the bond. In other words they would be "in a direct line" as those words are used by the plaintiff. [Board of Education v. Fid. & Guaranty Co., 166 Mo. App. 410, 422.] It was therefore unnecessary to use the word "directly" in the contract to accomplish what relator contends the use of the word does accomplish. Apparently the word was inserted in the bond for the purpose that the bond on its face indicates, that is to limit the persons who should have rights thereunder.

Relator cites us to the following statement of the law contained in Corpus Juris:

"Whatever is included in the bond, and is not required by the law, must be read out of it, and whatever is not expressed, and ought to have been incorporated must be read as if inserted into it." [9 C. J., p. 35.]

It is also stated in the same paragraph of Corpus Juris:

"Where a bond is given under the authority of a statute in force when it is executed, *in the absence of anything appearing to show a different intention* it will be presumed that the intention of the parties was to execute such a bond as the law required. [9 C. J., pp. 34, 35.]"

It has been held, in effect, that where the giving of a statutory bond was intended, the bond actually given may contain language that will be read out of it in some instances. For instance, it has been held that where the bond required more than the statute requires the part placing a more onerous obligation upon the surety than the law requires, in effect will be read out in the bond. However, there is some conflict in the authorities even as to this rule. Whatever may be the holdings in other States we think it plainly appears from the decisions that the rule in this State is that a condition will not be read out of a bond if by so doing the terms of the agreement will be materially altered and a burden inflicted upon the surety not contemplated by the plain terms of the bond. It has been the policy of courts in this State, where the bond does not conform to the statute, to treat it as a common-law bond and to give it such construction as its terms authorize regardless of the statute. [Lumber Co. v. Schwartz, 163 Mo. App. 659; State ex rel. v. O'Gorman, 75 Mo. App. 370; State ex rel. v. Horn, 94 Mo. 162; Nations v. Beard, 216 Mo. App. 33; State to Use v. Cochrane, supra.]

"It sometimes happens that a bond designed to be a statutory and official bond, falls short of the requirements of the statute in that its conditions are less onerous than those required by law. If such bond be accepted by the proper officer through negligence or complaisance, or a worse motive, the result is that although the bond is not a strictly official bond, and entitled to the special consideration accorded to such bonds by the statutes of the State, it is a valid common-law bond, and its obligors are bound by it to the full extent

of its terms.'' [Murfee on Official Bonds, pp. 306, 307. See also same work, pp. 44, 234.]

We have no hesitancy in declaring the bond in this suit to be a common-law bond and not a statutory bond. [1 Brandt on Surety-ship Guaranty (3 Ed.), p. 80.]

It is claimed by relator that there are other provisions in the bond that permit it to sue thereon. Taking all of the provisions of the bond and reading them together, which we must do (see 9 C. J., p. 33), it is plain that the bond covers the furnishing of materials on contracts made by persons directly with the principal, which does not include such a one as relator. There is nothing in relator's brief raising any question as to the propriety of the action of the court in rendering judgment in favor of Hackett and the Pfeiffer Stone Company, if the surety be not liable.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.