**LA SALLE IRON WORKS, INC.,**
**a Corporation, Appellant,**

v.

**L. J. LARGEN, doing business as L. J. Largen Construction Company and Universal Surety Company, a Nebraska Corporation, Respondents.**

No. 52226.

Supreme Court of Missouri, In Banc.

Dec. 12, 1966.

Rehearing Denied Jan. 9, 1967.

Sumner, Hanlon & Sumner, John F. Hanlon, Richard A. Schwartz, Clayton, for appellant.

F. Philip Kirwan, Patrick E. Hartigan, Kansas City, Norman Bierman, Stuart M. Haw, Jr., St. Louis, Margolin & Kirwan, Kansas City, Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, of counsel, for respondent Universal Surety Co.

EAGER, Judge.

This is a suit by a material supplier against the principal contractor and his surety for the value of material furnished to the contractor in the building of a church school. The case was submitted to the court without a jury on a stipulation of facts. The court rendered judgment against the contractor for $3,046.74, with interest, but in favor of the surety. Plaintiff appealed; the contractor did not. Hence, our problem lies in the issue between plaintiff and the surety. On appeal to the St. Louis Court of Appeals, that court reduced the recovery of plaintiff against the contractor to $2,805, with interest, and affirmed the judgment in favor of the surety. On application for transfer, we determined to review the case because of the holding of nonliability as to the surety.

On July 22, 1960, defendant Largen contracted with Union Lutheran School Association to build the "Green Park Lutheran School"; we shall refer to the latter as the "owner" or the "school." That contract is not in evidence, an oversight which should not have occurred. In anticipation of that contract, Largen contracted with plaintiff for the furnishing of structural steel and miscellaneous iron to be used in the construction for a price of $2,805; plaintiff fully performed that contract and furnished the material. It is further stipulated that, during the construction, plaintiff and Largen agreed that plaintiff should supply additional material of the reasonable value of $139.74; the stipulation does not state that this material was actually furnished, an apparent inadvertence. On July 28, 1960, Largen as principal and defendant Universal Surety Company, a Nebraska corporation, as surety, executed a "contract bond" to the Green Park Lutheran School as obligee, in the sum of $271,977 to secure the performance of the principal contract, which was made a part of the bond by reference. Since that bond is the source of the only real issue, we quote its controversial paragraph, as follows:

"Now, Therefore, the condition of this obligation is such that, if the Principal shall faithfully perform the contract on his part, and shall fully indemnify and save harmless the Obligee from all cost and damage which the Obligee may suffer by reason of failure so to do and shall fully reimburse and repay the Obligee all outlay and expense which the Obligee may incur in making good any such default, and shall pay all persons who have contracts directly with the Principal for labor or materials, then this obligation shall be null and void, otherwise it shall remain in full force and effect." Plaintiff demanded payment of Largen who refused or failed to pay, and subsequently the surety also refused to pay; hence this suit.

We relate the contentions of the parties in reverse order, giving first the contentions of defendant surety in support of its supposed nonliability. It says in substance: that this bond was given solely for the benefit of the obligee, the school, and that it gave plaintiff no right of action; that plaintiff was neither a creditor beneficiary nor a donee beneficiary and that it did not maintain the burden of showing that the parties intended to benefit it. Plaintiff asserts that it is one of the persons for whose benefit the bond was executed and that it has a direct right of action; and it questions the distinction frequently made between the liability of sureties on bonds for private and public works.

The trial court expressly based its judgment in favor of the surety on the decision in Uhrich v. Globe Surety Co., 191 Mo.App. 111, 166 S.W. 845; the Court of Appeals, after an extended discussion, adopted the conclusion reached in Uhrich as "sound." The case thus comes to us, for a determination as upon an original appeal, from a decision holding that the obligee in the bond was only interested in its own protection, that the provision for the payment of claims for material and labor was incidental, that from all the circumstances there was no purpose or intent on the part of the obligee to require payment of such claims, and that there was no demonstrated interest of the obligee in the claims of such creditors; and, therefore, all such intent being lacking, the surety was not liable.

We first discuss the Uhrich case. It is a decision of the Kansas City Court of Appeals, rendered in 1914. There the plaintiff sold and furnished materials to a contractor who, with the surety, executed a performance bond. The case was decided upon the sustaining of a demurrer to the petition and a refusal to plead further. The contractor had agreed to erect the building and to pay for all labor and materials; the owner contracted to pay the agreed sum provided that all persons dealing with the contractor should be paid so that they would have no liens, with further provisions for the retention of funds and direct payments if so desired. The bond, in so far as its terms appear, was conditioned " 'that, if the said contractor shall duly perform said contract and fulfill all the several stipulations therein provided, then this obligation is to be void, but, if otherwise, the same shall remain in full force and virtue. It is hereby expressly agreed that the said L. G. Hill may make payments in any amounts to the contractor, subcontractor, and materialmen and laborers, and such payments shall in no wise limit, affect, or reduce our liability hereunder.' " The bond does not appear to have contained any condition concerning the payment of claims for material and labor. The plaintiff there had filed a lien

and had a suit pending to enforce it. The court recognized, with limitations, that a third person for whose benefit a contract was made could enforce it, although not privy to the consideration; but it emphasized the element of mutual intent of the parties "as expressed in the instrument" and "in the light of the circumstances * * * where there is uncertainty or ambiguity * * *." The court concluded that the payment of debts such as plaintiff's was not intended by the parties as one of the "direct objects" of the bond, but was only incidental to the idea of "protecting the property of the owner from liens * * *." And the court noted the distinction between cases such as that and those cases involving public bonds where no lien may be obtained. The court emphasized the dominant thought of liens, and the omission from the bond of any provision giving materialmen a right of action. We shall return to this case later.

There has been a vast amount of litigation on this subject, and it will be physically impossible to discuss even a substantial proportion of the cases. An exhaustive annotation appears in 77 A.L.R., beginning at page 21. This is supplemented by another annotation at 118 A.L.R. 57. In the later annotation the author states, at page 65: "As shown in the original annotation, the great weight of authority sustains the right of a person furnishing labor or materials to recover on a private building contractor's bond in which the owner of the property is named obligee, conditioned that the contractor shall pay all claims for labor and materials, or that he shall pay laborers and materialmen. The later cases generally support this rule." In the original annotation many authorities are discussed; the terms of the bonds discussed in the cases naturally vary, but no doubt can remain concerning the conclusion stated in the later annotation. It is thus also stated that a condition of such a bond for the payment of laborers and materialmen is clearly for the benefit of such persons, and that the authorities holding to the contrary, relying on the obligee's supposed intention, confuse the

*intent*, "which is the act or result contemplated by the terms of the bond, with the motivating purpose or desire of the owner in requiring the bond." 77 A.L.R. loc. cit. 213. We note particularly this confusion, as applied to the present case. Again, the same annotator says: "As well stated by Professor Arthur L. Corbin in 38 Yale L. J. 1, 3, if there is an actual promise by the obligors to pay the third party, either by express words or by reasonable implication, there is no need to speculate for whose benefit the undertaking was made. Of course, the question of intention to benefit cannot be eliminated altogether in considering the rights of third parties, since in many cases the promise for their benefit is not clearly expressed and the meaning of the instrument is doubtful. But, where clearly there exists a promise to pay a third party, any further inquiry into the intention of the parties to benefit him is irrelevant." 77 A.L.R. loc. cit. 31; and at loc. cit. 51: "* * * the intention, as disclosed by the terms of the bond and contract, is controlling. If the bond is so conditioned that its performance will necessarily and directly benefit laborers and materialmen, it is, in legal contemplation, 'intended' for their benefit; and it makes no difference that the object motivating the parties to the bond was the protection of the obligee. In the second place, there is no valid basis for the requirement that there be a duty or obligation owing by the obligee to the laborer or materialman or some consideration passing from the latter to the former, so as to create privity of consideration." The statements in those annotations are supported by copious authorities. See, generally, for the positions stated: New York Indemnity Company v. Hurst, 252 Ky. 59, 66ᵛ S.W.2d 8, 94 A.L.R. 864; Fowler v. Doran et al., 123 Neb. 37, 241 N.W. 759; Knight & Jillson Company v. Castle, 172 Ind. 97, 87 N.E. 976, 27 L.R.A.,N.S., 573; Cherry, for Use of Geager, Receiver v. Charles Benson, Inc., 264 Ill.App. 199 (citing many cases in support of the ruling); Hartford Accident & Indemnity Company v. W. & J. Knox Net & Twine Company, 150 Md. 40, 132 A. 261;

The Bryam Lumber & Supply Company v. Page, 109 Conn. 256, 146 A. 293; Thompson Yards, Inc. v. Van Nice et al., 59 S.D. 306, 239 N.W. 753; American Employers' Ins. Company of Boston v. Lee & Kincaid Coal Company, 226 Ala. 262, 146 So. 408; Topeka Steam Boiler Works Company et al. v. United States Fidelity & Guaranty Company, 136 Kan. 317, 15 P.2d 416; Hollerman Mfg. Company, Inc. v. Standard Accident Ins. Company, 61 N.D. 637, 239 N.W. 741; McClelland et al. v. New Amsterdam Casualty Company, 322 Pa. 429, 185 A. 198; Concrete Steel Company v. Illinois Surety Company, 163 Wis. 41, 157 N.W. 543; Mansfield Lumber Company v. National Surety Company, 176 Ark. 1035, 5 S.W.2d 294; Johnson Electric Company v. Columbia Casualty Company, 101 Fla. 186, 133 So. 850, 77 A.L.R. 1; Pennsylvania Supply Company v. National Casualty Company, 152 Pa.Super. 217, 31 A.2d 453; Fidelity & Deposit Company of Baltimore, Maryland v. Rainer, 220 Ala. 262, 125 So. 55, 77 A.L.R. 13. And see, also, the many cases cited to the same effect in Corbin on Contracts, Vol. 4, pp. 165–167. Some of these cases emphasize the presence of conditions identical or very similar to the one in our bond providing that the surety "shall pay all persons who have contracts directly with the Principal for labor or materials * * *." And see, also, 17 Am.Jur.2d, Contractors' Bonds, § 18, p. 204 where, citing cases, it is said: "In accordance with the principles discussed in the preceding sections, the courts generally sustain the right of a person furnishing labor or materials to recover on a private building contractor's bond naming the owner of the property as obligee, conditioned that the contractor shall pay all claims for labor and materials or that he shall pay laborers and materialmen." Some of these authorities emphasize, as already indicated, that the intent of the parties is to be determined primarily from what they have put into their contracts, with the circumstances to be considered in case of uncertainty or ambiguity. Some also note that if the condition for the payment of claims for material and labor

is not construed to give a right of action to such persons, then the provision is meaningless. Thus, it is stated in Corbin on Contracts, Vol. 4, Ch. 43, § 798, pp. 163–164: " * * * the third party has an enforceable right if the surety promises in the bond, either in express words or by reasonable implication, to pay money to him. If there is such a promissory expression as this, there need be no discussion of 'intention to benefit.' We need not speculate for whose benefit the contract was made, or wonder whether the promisee was buying the promise for his own selfish interest or for philanthropic purposes. It is a much simpler question: Did the surety promise to pay money to the plaintiff?" And, again, at loc. cit. 173–174, § 800: "Words of 'condition' are not words of 'promise' in form; but in the case of a penal bond they must be construed to be words of promise, inasmuch as the only express words of promise are those in which payment of the penal sum is promised." We are not dealing here with a gratuitous surety, who has sometimes been said to be a favorite of the law, but with a compensated, commercial surety which is to be held strictly to the terms of its contract. If the surety wishes to exclude this type of liability it may consider such a bond as is shown in Bourrett v. W. M. Bride Construction Company, 248 Iowa 1080, 84 N.W.2d 4, where all rights of action by any one except the named obligee in the bond were expressly excluded. The present surety is a Nebraska corporation and it should have been aware of the ruling of its own Supreme Court, as heretofore cited, and of the majority rule.

Counsel for the surety seem to concede that the numerical weight of authority is contrary to its contentions here; so did the Court of Appeals as to the "weight of the precedents"; we are not attempting to keep a "running score," as that court said was an improper test, but it is material in any organized legal philosophy that we note a substantial weight of authority on a controversial issue. Defendant insists that Uhrich, supra, represents the established Missouri law, and also the correct interpretation of this present bond. We have discussed the facts and the holding in that case. Admittedly, there are cases supporting the tenor of defendant's arguments and contentions. Maryland Casualty Company v. Johnson (D.C.Mich.), 15 F.2d 253; Standard Accident Ins. Company v. Blythe (Tex.Com.App.), 130 Tex. 201, 107 S.W.2d 880; Shaw v. O'Sullivan (Tex.Civ.App.), 334 S.W.2d 223; Gateway Barge Line, Inc. v. R. B. Tyler Company (La.App.), 175 So. 2d 867; Brower Company v. Noise Control of Seattle, Inc., 66 Wash.2d 204, 401 P.2d 860. Brower, supra, seems to hold that the bond must expressly give a right of action to a materialman; perhaps Gateway and Shaw are in the same classification. That class of cases, generally, seems to proceed upon the theory of a motive of the owner to protect himself only, creating from this a supposed intent not to confer a direct benefit upon third party suppliers. In one recent case cited by defendant, James A. C. Tait & Company v. D. Diamond Corporation, 228 Or. 602, 365 P.2d 883, the court rather reluctantly followed the rule of its prior cases denying recovery (admitting it to be in the minority), but quoted at length and with apparent approval from Corbin on Contracts to the contrary; it finally concluded that the question should be left to the legislature in order to avoid disturbing existing contracts.

In a supplemental brief counsel rely very largely upon certain statements in the Restatement of Contracts, Ch. 6, § 133(a) and (b) to the general effect that a third person, in order to receive the benefit of a contract between others, should be a donee beneficiary or a creditor beneficiary; they insist that this plaintiff is neither. These sections, and the comments and illustrations thereunder, deal with legal theories supposedly applicable to contracts in general and in the abstract; we are influenced to a greater extent here by the reasoning of the specific, decided cases on facts like our own. We note, however, that the restatement does not really seem to exclude re-

covery in a situation such as we have; it states that a third person may be a donee beneficiary when it appears from the terms of the promise and the circumstances that the purpose of the promise is to confer upon such third person a right against the promisor to some performance not due from the promisee. We construe the *terms* of the present bond as evidencing an intent to confer a right of action upon materialmen against the surety; unless the bond is so construed the provision for payment to such persons is meaningless.

Sundry Missouri cases are cited pro and con which we do not find of sufficient applicability to merit discussion. Fellows v. Kreutz, 189 Mo.App. 547, 176 S.W. 1080; City of St. Joseph ex rel. Consolidated Stone Company v. Pfeiffer Stone Company, 224 Mo.App. 895, 26 S.W.2d 1018; Black & White Cabs of St. Louis, Inc. v. Smith, Mo.App., 370 S.W.2d 669, and others. Both sides cite the last case, and it contains language conceivably favorable to each, but it arose on wholly different facts.

Counsel argue that the provision in question was necessary in order to prevent the filing of mechanics' liens and thus to protect the owner-obligee; in support of this argument, they seem to say that the contractor may have only been required by the terms of his contract to *furnish* all labor and materials and not to *pay* for them. The contract is not in evidence and we may assume no such provision; moreover, despite language in one or two old cases attempting to make some distinction between the phrases "to furnish" and to "pay for" (for which there may be some justification under other facts), we would regard it as rather ridiculous to hold that one who had contracted to *furnish* all labor and material for the construction of a building had not agreed to furnish it *fully paid,* at least in so far as liens are concerned. To hold otherwise would exalt technicalities over practicalities. Also, the other conditions of the bond here (as originally quoted) for full indemnity and reimbursement of the owner for all cost, damage, outlay and expense,

constituted full protection to it as to mechanics' liens. If the condition in this bond for payment did not mean that materialmen and laborers should be paid, then it had no meaning. The condition was most specific in designating the class of suppliers who should be paid, namely, those who had contracts directly with the principal. We hold that it did impose upon the surety the duty to pay them, and upon unpaid materialmen the right to sue on the bond. In so far as an intent of the parties may be necessary, such intent was shown by this wording of the bond itself, there being nothing in the bond to create an ambiguity, and nothing in the facts or circumstances to the contrary.

Reverting to the case of Uhrich v. Globe Surety Co., 191 Mo.App. 111, 166 S.W. 845, we have already related the factual situation there; the bond merely required full performance of the construction contract which, in turn, required the contractor to pay for all labor and materials and further permitted the owner to make direct payments. There was no such provision in the bond as we have here, conditioned to "pay all persons who have contracts directly with the Principal for labor or materials * * *." In our view that case is distinguishable, but to the extent that it may hold contrary to what we have said in this opinion it should no longer be followed. Commercial sureties should have long been aware of the status of the authorities on this subject. It appears to us that they have not, generally, been very adept at expressing their real meanings in such bonds, but have continued to cling to long outmoded and cumbersome forms, running back for generations.

As previously noted, the stipulation of facts did not state that plaintiff had furnished the extras agreed upon, although it did state their reasonable value. We cannot supply such an omission. The stipulation states that the original contract price was $2,805; the letter-exhibit constituting the contract states the figure as $2,850, creating an inconsistency. We adopt the

figure stated in the stipulation, especially since that figure is also the amount stated in plaintiff's petition. It is further stated in the stipulation that demands were made on both defendants for the sum of $3,046.-74, an amount in excess of the contract price, even with the extras added. However, if demands were necessary here, neither defendant pleaded any lack of proper demand, § 509.410, RSMo 1959, V.A.M.S., and the surety admitted that plaintiff "made demand" upon it, and that it refused to pay the sum demanded or any part thereof. The judgment against defendant Largen should be reduced to the sum of $2,805 with interest at 6% from September 19, 1961; judgment should be entered in favor of plaintiff and against Universal Surety Company, for $2,805 with interest at 6% from June 29, 1962. The judgment as to Largen, as thus modified, is affirmed. The judgment in favor of defendant Universal Surety Company is reversed, with directions to the trial court to enter judgment against it as herein indicated. It is so ordered.

All concur.