Charles COATES et al.,
Plaintiffs-Appellants,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant-Respondent and Third-Party Plaintiff,

v.

Louis P. JANTZEN et al., Third-Party Defendants.

No. 35770.

Missouri Court of Appeals,
St. Louis District,
Division Three.

June 10, 1975.

Madigan & Maloney, Thomas B. Maloney, Duane Sherman Cox, St. Louis, for plaintiffs-appellants.

Doris Banta, George E. Lee, St. Louis, for defendant-respondent & third-party plaintiff.

Edward D. Weakley, Andrew S. Meyer, St. Louis, for third-party defendants.

McMILLIAN, Judge.

Plaintiffs, former employees of Barkley Contracting Company, a subcontractor, appeal from a judgment entered by the Circuit Court of St. Louis City in their favor for $3074.51 against defendant United States Fidelity and Guaranty Company (hereinafter referred to as USFG). In their amended petition plaintiffs had also sought attorney's fees and a penal amount for vexatious delay. But counsel for plaintiffs, who was not trial counsel, candidly admits that both these issues should be withdrawn because they were not properly proved below.

The question for decision is whether USFG, a surety on a payment and performance bond for a general contractor under a building contract, is liable on the bond to plaintiffs, employees of a subcontractor on that job, for the penalty set out in § 290.-110, RSMo 1969, V.A.M.S.,[1] for the subcontractor's failure to pay plaintiffs' wages for two weeks of work in October 1969. For reasons hereinafter given, we think not and affirm the judgment of the trial court.

On December 10, 1968, George L. Cousins Contracting Company (hereinafter referred to as Cousins) was the general contractor to construct a building known as West Side Community Gardens (hereinafter referred

---

1. All statutory references are to RSMo 1969.

to as West Side) at 5600 Cabanne Avenue, St. Louis, Missouri.

At the time of entering into the construction contract with the owners of West Side, Cousins entered into a payment bond agreement and performance bond agreement with USFG. Thereafter, Cousins entered into a contract with Larry Barkley and the Barkley Real Estate Company (hereinafter referred to as Barkley) jointly and severally for the performance of certain work at West Side.

All of the eight plaintiffs were former employees of Barkley. Each one except one Brown, made a claim for work performed for Barkley for the pay weeks ending October 22 and October 29, 1969. Each was issued checks by Barkley for those weeks, except plaintiff Brown who left on his own at the end of the October 22nd pay period. All of the checks were dishonored by Barkley's bank and returned unpaid to the plaintiffs. Plaintiffs claim that they were discharged by Barkley on 3 November 1969 and none of the checks was ever made good by Barkley.

With the exception of Brown, the other seven plaintiffs were employed by Cousins on 3 November 1969, with the understanding that Cousins would pay them for any time worked on October 30 and 31 of 1969. No contention is made that Cousins failed to honor his agreement. After October 31, 1969, plaintiffs except Brown continued in the employment of Cousins. After plaintiffs obtained a default judgment against Barkley in the Circuit Court of St. Louis City in the amount of $26,767.30, they made a demand for the judgment amount against USFG and Cousins. In the action against Barkley, plaintiffs claimed the amount of wages owed, as represented by the dishonored checks, and for penalties due

for unpaid wages under § 290.110. Neither Cousins nor USFG received any notice of plaintiffs' lawsuit against Barkley.

Plaintiffs' theory in the instant case is that USFG is obligated to pay the Barkley judgment under the terms of both the payment and performance bonds, including the penalty wages provided by § 290.110.

■ First, we dispose of plaintiffs' contention that the trial court erred in refusing to rule that all matters in their "Requests for Admissions" were admitted because USFG's answers were untimely. Rule 59.01, V.A.M.R. (1969). The trial court heard plaintiffs' request that "Requests for Admissions" be taken as admitted and denied the request, but permitted plaintiffs to read the requests into evidence. The court had before it not only plaintiffs' "Requests for Admissions," but also defendants' answer to them filed two years before trial. Plaintiffs neither suggest any lack of good faith in USFG's denial of their "Requests," nor indicate any prejudice to them by the claimed untimely filing of USFG's answers thereto.[2] We hold that it was within the trial court's discretion to allow the late filing of answers to a "Requests for Admissions" and absent a showing of either bad faith or prejudice that discretion reposed in the trial court is not abused. See *Webb v. Rench,* 476 S.W.2d 570 (Mo.App.1972) and *Bickel v. American Trust Life Ins. Co.,* 468 S.W.2d 873 (Tex.Civ.App.1971).

Turning to plaintiffs' second claim, we note that the payment bond is executed for the protection of the owner (West Side) from claims made by claimants who supplied materials and labor reasonably required for use in the performance of the contract. On the other hand, since the building project was an F.H.A. project, in addition to the payment bond, F.H.A. rules

2. See Cyclopedia of Federal Procedure (3rd Edition 1970), § 25.613, at p. 518, 519, where it is said: "The court may relieve a party against the effect of failure to respond to a notice to admit within the time specified in Rule 36 [Federal Rule 36 the model for our Rule 59.01] where there is no indication of lack of good faith on the part of the responding party and no prejudice to the requesting party." See also 93 A.L.R.2d 757, p. 759.

required a performance bond for the protection of the owner and the United States. *Sun Ins. Co. of New York v. Diversified Engineers, Inc.*, 240 F.Supp. 606 (Mont.D. Ct., 1965).

We further note that neither the performance bond nor the contract which it secured made any mention of wages. Nor is there any evidence that West Side (owner-obligee named in the performance bond) has incurred any costs or damage owed to plaintiffs. Neither is there any evidence that plaintiffs ever made any claim for wages or penalties against West Side. Moreover, a plain reading of the performance bond gives no right of action to anyone other than West Side. It expressly speaks in terms of a right of action of West Side and Travelers Ins. Co. (lender) and says that the aggregate liability of USFG to obligees or their assigns is limited to the penal sum of the bond, $1,340,503. Nowhere does it purport to give anyone else a right of action. Therefore, if plaintiffs are entitled to a recovery it must be found under the policy terms of the payment bond, not the performance bond.

USFG concedes that plaintiffs are "claimants" within the definitional terms of the payment bond and agrees that plaintiffs may sue thereunder for such sums as may be justly due them. In addition, USFG does not dispute that the $3074.51 awarded them by the court was the sum justly due.[3]

From the terms of the payment bond, we glean that USFG obligated themselves to pay, if sued by and judgment obtained by plaintiffs, any claims for work and labor performed or materials furnished by them such sums as justly due. From this plaintiffs would have us conclude that the penal sanctions of § 290.110 was applicable because of USFG's unlawful withholding of wages in violation of the statute. Section 290.110 provides:

". . . whenever any corporation doing business in this state shall discharge, with or without cause, or refuse to further employ any . . . employee thereof, the unpaid wages of any such . . . employee then earned at the contract rate, without abatement or deduction, shall be and become due and payable on the day of such discharge or refusal to longer employ; and such . . employee may request in writing of his foreman or the keeper of his time to have the money due him, or a valid check therefor, sent to any station or office where a regular agent is kept; and·if the money aforesaid, or a valid check therefor, does not reach such station or office within seven days from the date it is so requested, then as a penalty for such nonpayment the wages of such . . . employee shall continue from the date of discharge or refusal to further employ, at the same rate until paid; provided, such

---

3. "NOW, THEREFORE, THE CONDITIONS OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

"1. A claimant is defined as one having a direct contract with the Principal or with a subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of the water, gas power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.

"2. The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit."

wages shall not continue more than sixty days. . . ."

As we understand § 290.110 it deals with the employer-employee relationship and its purpose is to cause prompt payment of discharged, unpaid workmen. Furthermore, our Supreme Court, in *Monterosso v. St. Louis Globe Democrat Publishing Co.,* Mo., 368 S.W.2d 481 (1963), citing *Durant v. Industrial Products Mfg. Co.,* 241 Mo.App. 266, 235 S.W.2d 574 (1951) and *Quinn v. T. M. Sayman Products Co.,* 296 S.W. 198 (Mo. App.1927) declared § 290.110 to be penal in character and to be strictly construed. Continuing on, the court held, "Unpaid vacation pay under the collective bargaining contract did not constitute 'unpaid wages * * * then earned at the contract rate,' within the meaning of § 290.110 . . ." Here we have somewhat an analogous situation—plaintiffs claiming *unpaid wages for work performed* (unpaid vacation pay) *as wages under the payment bond* (wages earned at the contract rate); therefore, these wages are subject to the penalty provisions of § 290.110.

The analogy fails not only because of what was said in Monterosso, but also because there is no employer-employee relationship between USFG and the plaintiffs. This relationship existed, if at all, between Barkley and the plaintiffs. Furthermore, the payment bond never undertook to pay wages, but rather to pay any final judgment obtained by claimants for work or labor performed or materials furnished as is determined to be justly due. We do not decide that "justly due" in this context could either be the claimed amount or be a lesser amount for the work done or materials furnished, because both parties agree that the sum of $3074.51 is the actual amount of earned wages. Thus the question then becomes the applicability of the penalty authorized by § 290.110 to this amount of combined wages.

We hold that § 290.110 has no applicability to a surety's payment bond executed for the protection of the owner against material, men's claims for work and labor performed or materials supplied in performance of the construction contract. Section 290.110 is highly penal and is to be given a strict construction and applies to an employer-employee relationship, which existed between plaintiffs and Barkley, not USFG, the surety. And finding nothing in either the payment bond or construction contract to the contrary, plaintiffs' contention is disallowed.

We find each case that plaintiffs have referred us to, to be inapposite. In *National Union Fire Ins. Co. of Pittsburgh, Pa. v. D & L Const. Co.,* 8 Cir., 353 F.2d 169, cert. denied, 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 539, the case dealt with bonds issued under a contract for building 700 residential units. The main dispute involved the question of whether attorney's fees were recoverable under the bond. The court held that the contract between the builder and the owner expressly called for the payment of attorney's fees if there was a failure to perform under the construction contract. Since that contract called for attorney's fees, the bond covered them too, said the court, because the surety's rights and liabilities were measured by those of the principal. In the instant case, nothing is said in the construction contract about Cousins paying the wages of Barkley's employees.

The case of *J. R. Watkins Co. v. Lankford,* 363 Mo. 1046, 256 S.W.2d 788 (1953) is no authority for plaintiffs' contention that USFG is responsible for a penalty for Barkley's failure to pay wages. The case holds that a surety is liable on a bond though it was induced by fraud to become a surety, if the claimant knows nothing of the fraud. Obviously, in our case, there was no fraud by Cousins on the payment bond inducing USFG to become the surety.

Judgment affirmed.

SIMEONE, P. J., and GUNN, J., concur.