Linda G. MAHAN, Administratrix of
the Estate of Samuel P. Mahan,
Deceased, Plaintiff/Appellant,

v.

MISSOURI PACIFIC RAILROAD CO.,
Defendant/Respondent.

No. 53678.

Missouri Court of Appeals,
Eastern District,
Division Five.

Sept. 27, 1988.

Application to Transfer Denied
Dec. 13, 1988.

Ernest G. Trakas, Joseph L. Walsh, II, Joseph L. Walsh, III, St. Louis, for plaintiff/appellant.

Patrick J. Hagerty, Michael D. O'Keefe, St. Louis, for defendant/respondent.

SATZ, Presiding Judge.

Samuel Mahan (Mahan) was employed by defendant, Missouri Pacific Railroad Company. While in the engine of a train owned by defendant, Mahan was killed when the train collided with another train owned by defendant. Mahan's widow, administratrix of Mahan's estate and plaintiff here, sued defendant for damages. Plaintiff appeals. We affirm.

Plaintiff sued defendant in four counts. Count I bases liability on *res ipsa loquitur*. Count II alleges a breach of a duty to warn. Count III alleges a malfunction of train brakes in violation of the Safety Appliance Act, 45 U.S.C. § 1 (1982). Count IV alleges the malfunction of the brake sanding system of Mahan's train in violation of the Boiler Inspection Act, 45 U.S.C. § 23 (1982). At the close of all the evidence, the trial court directed verdicts in favor of defendant on Counts I, II, and IV. Plaintiff moved to amend her pleadings to conform to the evidence, by pleading another claim against defendant based upon defendant's alleged failure to follow one of its own operational rules. Plaintiff's motion was denied. The court submitted the case to the jury on Count III—the alleged malfunction of the train brakes. The jury returned a verdict for defendant. This appeal followed.

Plaintiff attacks two of the directed verdicts, contending she made a submissible case on failure to warn and on *res ipsa loquitur*. We disagree.

■ To determine submissibility, we view the evidence in the light most favorable to plaintiff. *Morgan v. Toomey*, 719 S.W.2d 129, 130–31 (Mo.App.1986).

On October 3, 1982, Mahan was the assigned engineer on defendant's train UMS–02 headed south from Cotter, Arkansas to Memphis, Tennessee. A second crew, referred to as a dead-head crew, boarded the train in Cotter for the ride to Newport, Arkansas, a city north of Memphis. At Mahan's request, the engineer of the dead-head crew operated UMS–02 until the dead-head crew disembarked in Newport. The dead-head engineer testified he had trouble the first time he slowed the train but that the trouble did not reoccur.

After Newport, Mahan and the crew assigned to UMS–02 took over control of the train. The train was then on a portion of track consisting of a single track. This track turns into double tracks at Southbridge Junction south of Newport. UMS–02 proceeded south through Southbridge Junction on the eastern portion of the double tracks. These tracks converge into a

single track further south at Glaise Junction. The train could switch from the eastern to the western track at a point about seven miles north of Glaise Junction.

As the front engine of southbound UMS–02 approached Glaise Junction, it passed train SMU–02 which was headed north on the western track. The fireman of the northbound SMU–02 testified that about thirty-five cars of his 70 to 80 car train had passed the Glaise Junction switch and entered onto the double track portion of the track when his engine passed the engine of southbound UMS–02. The northbound fireman heard the emergency brakes being applied on southbound UMS–02 as the two engines passed each other. However, southbound UMS–02 did not stop in time to avoid colliding with that portion of northbound SMU–02 which had not yet traversed the switch onto the double tracks. Mahan and other crew members in the lead engine of southbound UMS–02 died in the crash.

In support of her failure to warn theory, plaintiff contends that defendant's dispatcher knew or should have known the trains were going to collide in time to communicate appropriate warnings. Plaintiff, however, fails to cite evidentiary facts to support this contention.

Plaintiff's evidence showed: Defendant's dispatcher monitored the movement of the trains by lights on an electrical board; the lights were triggered by the trains' movements over specific points on the track; the dispatcher could communicate with each train by phone or radio; and the dispatcher did not communicate any warnings to either train. The trains are directed to slow, stop, or proceed by signal lights along the track. Some signals are set to automatically give a stop signal if there is a signal to proceed for a train travelling in the opposite direction. For a southbound train approaching Glaise Junction from the north, as UMS–02 was, there was an approach signal 2¾ miles from the junction and an "absolute" stop signal 100 feet from the junction. Similar signals controlled the movement of a northbound train.

Viewing all the evidence most favorably to plaintiff, the record simply does not show that any of the switch signals were malfunctioning, nor does it show the dispatcher should have been aware of a malfunction if one existed, and it certainly does not show the dispatcher was made aware of a malfunctioning signal in time to communicate the danger of a collision and prevent it. Thus, plaintiff simply did not show how the dispatcher knew or should have known southbound UMS–02 would collide with northbound SMU–02. *See Fowler v. Gulf, Mobile & Ohio R.R. Co.*, 286 S.W.2d 404, 409 (Mo.App.1956); see also *Elliott v. St. Louis Southwestern Ry. Co.*, 487 S.W.2d 7, 14 (Mo.1972).

Plaintiff also follows another tack to support her argument. During cross-examination, an assistant train manager testified that defendant had an operational rule providing that trains on double tracks should be routed on the right-hand track. Plaintiff's evidence showed southbound UMS–02 was on the east-track and northbound SMU–02 was on the west-track of the double tracks in evidence here. The trains, thus, were routed in a left-hand direction, in violation, plaintiff argues, of defendant's so called "right-hand" rule. This routing, plaintiff contends, imposed "a greater duty to warn" on defendant. Plaintiff, however, does not explain what this "greater duty" was. We assume plaintiff means the alleged rule violation is a fact which should have made defendant exercise more caution than defendant would be required to exercise if the alleged violation had not occurred.

To support this argument, plaintiff relies on *Southern Ry. Co. v. McGuin*, 240 F. 649 (4th Cir.1917), *cert. denied* 244 U.S. 654, 37 S.Ct. 652, 61 L.Ed. 1373 (1917). *McGuin* involved the death of a railroad employee who sought to avoid a northbound train by stepping onto the southbound track. However, because of a broken rail, the train was traveling on the southbound track. The court observed:

Running a north-bound train on the south-bound track is not evidence of negligence, and all employes [sic] of the railroad must take notice of the occasional necessity to make the change. Never-

theless, as that is not the usual method of running, the railroad company must take notice that their employes [sic] will naturally be somewhat less on guard against a north-bound train running on a south-bound track, and due care requires greater precautions. *Id.* at 651.

Plaintiff's reliance on *McGuin* is misplaced. In *McGuin,* there was evidence the accident was the result of the northbound train running on the southbound track. Here, plaintiff did not show the routing of the trains was the cause of the collision. Plaintiff's evidence did show the distance at which the crew of southbound UMS–02 could see the Glaise Junction "absolute" stop signal was reduced to 923 feet. However, without the evidence of what the sight distance would have been had the trains been on the other tracks, there is no factual basis to conclude the routing of the trains caused or contributed to the cause of the collision.

Plaintiff next contends she made a submissible case under the doctrine of *res ipsa loquitur.* We disagree.

▆▆ Res ipsa loquitur is a doctrine based upon circumstantial evidence. The doctrine permits a jury to infer negligence without proof of specific negligent conduct on the part of the defendant. In Missouri, we apply the doctrine and, thus, permit the inference when (1) the incident resulting in injury is of the kind which ordinarily does not occur without someone's negligence; (2) the incident is caused by an instrumentality under the control of the defendant; and (3) the defendant has superior knowledge about the cause of the incident. *E.g. McCloskey v. Koplar,* 329 Mo. 527, 46 S.W. 2d 557, 559 (Mo. banc 1932); *McClintock v. Terminal R.R. Ass'n. of St. Louis,* 257 S.W.2d 180, 184 (Mo.App.1953). The second element—control—focuses on the defendant as the possible negligent actor. As in any case of negligence, in order to make a submissible case, the plaintiff must show that it was more probable than not that the defendant was the cause of the negligence. *See McCloskey v. Koplar, supra* at 563. If the plaintiff shows the defendant was in exclusive control of the instrumentality which caused the accident, he has inferentially focused negligence upon defendant. If the plaintiff does not show the defendant's exclusive control of the instrumentality, he still may fix the defendant with responsibility for the negligence by showing the defendant had the right or power to control the instrumentality and the opportunity to exercise it. *See e.g., McCloskey v. Koplar, supra* at 560. However, if the plaintiff merely shows this constructive control by the defendant, the inference that the defendant's negligence caused the accident does not necessarily follow. The plaintiff must, therefore, adduce additional evidence to show the defendant's responsibility. *See Hart v. Emery, Bird, Thayer Dry Goods Co.,* 233 Mo. App. 312, 118 S.W.2d 509, 511 (1938). The plaintiff need not exclude every possible source of the negligence except the defendant, but he must show it was more probable than not that the defendant was the source of the negligence. *Neis v. National Super Markets, Inc.,* 631 S.W.2d 690, 691 (Mo.App.1982). When the plaintiff simply shows it was at least equally probable that the negligence was due to another, the plaintiff has not made a submissible case. *Id.* at 691. Thus, for example, to make a submissible case when the plaintiff is operating the engine of a train involved in an accident, the plaintiff must show his conduct was not the cause or "proximate cause" of the accident. *Chambers v. Missouri Pac. RR Co.,* 356 S.W.2d 64, 66[2] (Mo.1962); *Allen v. St. Louis–San Francisco RR.,* 297 S.W.2d 483, 488[4] (Mo. 1956); *Cantley v. Missouri–Kan–Tx R. Co.,* 353 Mo. 605, 183 S.W.2d 123, 127 (1944); *see also Jesionowski v. Boston & Main R.R.,* 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416 (1947).

▆▆ In the present case the only probative evidence of control that plaintiff showed leads to the inference that Mahan was in control of the train engine at the time of the collision. Mahan was the assigned engineer on the UMS–02 for its trip south from Cotter, Arkansas to Memphis, Tennessee. At Mahan's request, the engineer of the dead-head crew operated UMS–

02 until he and the dead-head crew disembarked in Newport. When he left the train, the dead-head engineer said Mahan was "at the controls" of UMS–02. There was no evidence to indicate anyone other than Mahan was operating UMS–02 at the time of the collision. Even viewed in the light most favorable to plaintiff, this evidence does not show it was more probable than not that defendant had exclusive control of southbound UMS–02 at the time of the collision nor does it show that if Mahan were in control it was more probable than not Mahan's conduct was not the cause or "proximate cause" of the collision. Plaintiff may have shown an extraordinary occurrence. She did not show the inferred probability that defendant was the cause of that occurrence.

■ Plaintiff also contends the trial court improperly refused to permit her to amend her pleadings to conform to the evidence. Plaintiff's request to amend her pleadings was primarily based on two facts: the existence of defendant's so called "right-hand rule" of routing and the actual "left-hand" routing of the trains in issue here. Based on these two facts, plaintiff, at the close of the entire case, requested the trial court to permit her to amend her petition so as to include "a negligence theory ... that the defendant did not follow its own rules as to the direction of traffic in a right-hand turn...." Plaintiff now argues the evidence in question was elicited without objection from defendant, and, thus, plaintiff contends, defendant impliedly consented to the amendment of the pleadings to include the issue of "defendant's failure to follow its own rules."

"A trial court has broad discretion when determining whether to permit an amendment of the pleadings, and the court's decision will not be disturbed on appeal unless there is an obvious and palpable abuse of such discretion." *Fisher v. McIlroy*, 739 S.W.2d 577, 580 (Mo.App.1987). The *record* before us does not disclose when plaintiff filed suit. The record, however, does show

the collision took place on October 3, 1982, and also shows plaintiff conducted extensive discovery prior to trial in July, 1987. Plaintiff had ample opportunity to develop all her theories of negligence, and the trial court, thus, acted within its discretion in denying plaintiff's request to add an additional theory just prior to submitting the case to the jury.

■ Moreover, plaintiff's argument of an amendment of her pleadings by implied consent is not persuasive. Pleadings may be amended by implied consent when evidence is introduced on an issue without objection; but the evidence must be relevant only to that issue and not be relevant to an issue already in the case. *Fisher v. McIlroy, supra* at 580. Here, plaintiff herself has argued that evidence of defendant's "right-hand" rule is relevant to her pleaded theory of failure to warn. Thus, defendant had no reason to object when this evidence was elicited, and, for that reason, defendant's failure to object did not constitute an amendment of plaintiff's pleadings by implied consent.

Plaintiff next attacks two evidentiary rulings of the trial court. Neither one has merit.

Prior to trial, plaintiff attempted to obtain information about the brakes of southbound UMS–02 and the sanding devices used to aid them in braking the train.[1] More specifically, plaintiff sought evidence to establish the fact that no sand was found at or just north of the point of the collision. Plaintiff, apparently, was dissatisfied with defendant's answers to plaintiff's first and second set of interrogatories. Plaintiff then attempted to depose Jack Spurr, a Road Foreman of Engines employed by defendant. Spurr had taken part in what plaintiff characterizes as a "formal investigation" of the collision, and, according to plaintiff, Spurr had "testified" at a hearing conducted by defendant that he had found no sand in the area in question. Prior to the second setting of Spurr's deposition, defendant informed plaintiff that Spurr's doctor:

---

**1.** Plaintiff used several discovery devices to obtain the information. Their exact sequence is not readily ascertainable either from the record or from the briefs of the parties.

advised counsel for defendant that Mr. Spurr is unavailable for deposition and/or live testimony pertaining to this matter due to medical reasons at the present and for the reasonably foreseeable future.

Plaintiff then requested defendant to admit Spurr had made "an investigation of the accident scene" and to admit to certain specific acts and findings of Spurr, particularly that Spurr found no sand in the area in question. Defendant admitted Spurr "went to the scene of the collision" sometime after the collision, denied that "Spurr, in his capacity as Road Foreman of Engines, made an investigation of the accident scene", and, as to Spurr's conduct and findings, defendant answered:

> Defendant is unable to verify the information [requested] due to Mr. Spurr's medical disability and inability to remember the matters [requested].

Plaintiff apparently found these answers unacceptable, and, in another set of Requests for Admissions, plaintiff requested defendant to admit it conducted a "Formal Investigation" and to admit specifically quoted portions of Spurr's testimony at the hearing, particularly, Spurr's testimony that he found no sand. Defendant objected to these requests on the ground that "an investigation conducted by [defendant] into the accident ... is in no way relevant to the instant lawsuit," and, as to the request to admit Spurr's testimony, defendant answered:

> Defendant is unable to verify the matters referred to in this request through Mr. Spurr or anyone else present at the time of the alleged testimony, and therefore denies same.

From the record, it appears plaintiff did not pursue her discovery any further or request any sanctions prior to trial. At trial, plaintiff argued the record showed defendant's responses were made in bad faith. Therefore, plaintiff argued, her Requests for Admissions should be deemed "admitted" and, if not "admitted", then plaintiff argued she should be permitted "to impeach" the "denials" of defendant by reading into evidence the transcript of Spurr's testimony made at the "formal hearing." The trial court denied these requests. On appeal, plaintiff contends the trial court erred in denying her requests.[2]

■ We do not find the trial court's rejection of plaintiff's requests to be an abuse of discretion. If the trial court found defendant's responses to plaintiff's Requests for Admissions were intentionally improper, the court could, as one of several sanctions, deem the admissions requested admitted. Rule 59.01. The record of discovery before us, however, shows the defendant's responses to be at worst disingenuous, and, being confronted with the alleged impropriety of these responses for the first time at trial, the court was well within its discretion to deny this request of plaintiff. *See, e.g., Coates v. United States Fidelity & Guaranty Co.,* 525 S.W. 2d 654, 655 (Mo.App.1975).

Plaintiff's additional request to admit Spurr's testimony for the purposes of impeaching defendant's denials also was properly rejected by the trial court. Plaintiff's argument is circuitous, at best. Without Spurr's testimony being admissible, there is nothing to impeach. Moreover, the propriety of defendant's denials is for the court to decide, not the jury. Plaintiff's attack is nothing more than an attack on the "character" of the defendant and that issue was not before the jury.

■ Finally, plaintiff contends the trial court improperly permitted defendant to cross-examine plaintiff's economist about plaintiff's entitlement to survivor's benefits. The jury found the issues of liability in favor of the defendant and, thus, never reached the issue of damages. Thus, if there were error in this cross-examination, it was not prejudicial. *Black v. Cowan*

---

2. Both at trial and on appeal, plaintiff makes a passing reference to Spurr's testimony being admissible as an "admission" binding on defendant. The present record, however, does not show Spurr was the kind of employee or agent whose authority made his statements binding on defendant. *See e.g. Gary Surdyke Yamaha, Inc. v. Donelson,* 743 S.W.2d 522, 524 (Mo.App. 1987).

*Constr. Co.,* 738 S.W.2d 617, 621 (Mo.App. 1987).

JUDGMENT AFFIRMED.

SMITH and GRIMM, JJ., concur.