**MARSHALL INTERIORS, INC.,**
Plaintiff/Appellant,

v.

**YOUNG MEN'S CHRISTIAN ASSOCIA-
TION OF GREATER ST. LOUIS,**
Defendant/Respondent.

No. 56007.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 27, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 28, 1990.

Application to Transfer Denied
May 15, 1990.

Marc S. Wallis, St. Louis, for plaintiff/appellant.

Robbye Hill Toft, St. Louis, for defendant/respondent.

GRIMM, Judge.

Plaintiff Marshall Interiors, Inc., a furniture company, brought suit against defendants Young Men's Christian Association of Greater St. Louis and Prinster–Neumann Construction Company. Plaintiff alleged that the YMCA "and/or" Prinster–Neumann "had exclusive control and/or possession" of a whirlpool, and that "water from the whirlpool . . . caused serious water damage to plaintiff's inventory." Before trial, plaintiff settled and dismissed its claim against Prinster–Neumann.

The case was submitted under the doctrine of res ipsa loquitur. Following a jury verdict in plaintiff's favor, the trial court granted the YMCA's motion for judgment notwithstanding the verdict.

On appeal, plaintiff raises one point: the trial court erred in granting a j.n.o.v. because plaintiff made a submissible case. We disagree. The YMCA did not have exclusive control of the instrumentality which caused plaintiff's damages, and plaintiff did not show that it was more probable than not that the YMCA was the source of the negligence. We affirm.

When a trial court grants a j.n.o.v., the reviewing court takes the evidence "in the light most favorable to the party against whom the judgment was entered, giving [that party] the benefit of reasonable inferences that may be drawn therefrom." *Hinton v. State Farm Mut. Auto. Ins. Co.,* 741 S.W.2d 696, 700 (Mo.App.W.D.1987). The court disregards the opposing party's evidence "except to the extent it supports the verdict." *Id.*

I

Plaintiff's occurrence evidence was presented by three witnesses, Peter Neumann, Marshall Wasserman, and Vito Rallo. Neumann was the "owner" of a commercial building. Wasserman was the

"owner" of plaintiff, while Rallo "owned" the Martial Arts Center of St. Charles, Inc.

In 1983, there were three tenants in Neumann's building. Plaintiff was one. The other two were the Nautilus Physical Fitness Center of St. Charles County, Inc. and the Martial Arts Center. The three businesses were separated by walls. The Martial Arts' employees and students, however, had free access to, and the right to use, the rest rooms, showers, dressing room and lockers located in the Fitness Center.*

On January 6, 1984, the YMCA bought the Fitness Center's equipment, including a whirlpool. The YMCA intended to move the equipment from the Fitness Center's location to its own facility. It was, however, unable to do so immediately. Thus, the YMCA leased the Fitness Center's space until January 28, 1984.

In January, the YMCA utilized the equipment, but not the whirlpool, at Neumann's building. To help in the transition, the YMCA hired two former employees of the Fitness Center, Neumann and Chris Hamer.

In late January, most of the equipment was moved to the YMCA's facility. Unable to move all of it, the YMCA was allowed to leave five or six machines and the whirlpool at the building on a temporary basis.

The whirlpool had not been used for several weeks. It had "no more than—maybe as much as 50 to 60 gallons [of water] in there, at the most." The water in it was bad, "it had some scum on it and it had mold and it stunk."

According to Rallo, the smell was in "the area where we dressed, the shower area and the locker room." These rooms were adjacent to the whirlpool. The whirlpool abutted the wall that separated the warehouse from the fitness center.

Rallo contacted Hamer, who was then working for the YMCA. He asked Hamer if something could be done about the stench. Hamer said, "yes," and indicated that he knew how to drain the whirlpool.

---

* No exhibit or testimony in the record before this court illustrates or explains the actual physical layout of the premises. The record also fails to establish the location of the equipment within the facilities.

On February 6, around 6 p.m., Hamer went to the building and met Rallo. Hamer, who had drained the whirlpool six times previously, went to the whirlpool area. He hooked up the drain hose to a floor drain and started the draining. Around ten or fifteen minutes after Hamer started draining the whirlpool, Rallo and Hamer both left. Although he was not certain, Rallo thought he and Hamer left together.

The next morning, plaintiff's employees found water in plaintiff's warehouse. When Wasserman arrived, water was on the parking lot. In the warehouse, "water was on the floor several inches deep." The water "was coming from underneath the wall." Numerous pieces of furniture were water damaged.

Neumann and Rallo were contacted and went to the building. They found water on the floor of the warehouse. There was also water on the floor in the whirlpool area, as well as in the dressing room area. The water from the whirlpool area did not "go all the way up to the showers." One-half to all of the floor in the Fitness Center was wet. The water had no odor.

## II

The YMCA's motion for judgment notwithstanding the verdict alleged that plaintiff failed to make a submissible case. Defendant alleges that plaintiff failed to show the following: (1) that the "water which damaged plaintiff's inventory came from the whirlpool, as plaintiff's only evidence was that the whirlpool was drained, the drain was connected to a hose, the hose fed into a toilet drain connected directly to the sewer, and no water was found standing in or around the drain the morning the water damage was discovered"; (2) that Hamer was acting within the scope of his employment when he drained the whirlpool; (3) that the "YMCA had the control over, right to control or management of the whirlpool, as the evidence showed that YMCA's lease of the premises had ceased and that Vito Rallo, Peter Neumann and Marshall Wasserman had unfettered access to the whirlpool"; (4) that the YMCA had control of the "water sources," as Rallo, Neumann,

and Wasserman "had unfettered access to the water sources in the whirlpool room"; (5) that other reasonable causes were not sufficiently eliminated; (6) that the water damage to plaintiff's furniture was a direct result of the YMCA's negligence; (7) that draining the whirlpool caused plaintiff's damage; and (8) that the YMCA owed plaintiff a duty with regard to the whirlpool.

■ In granting the j.n.o.v., the trial court did not specify any particular ground. We affirm such a judgment, however, if "the action of the court is supported by at least one of the grounds raised in the motion." *Goodenough v. Deaconess Hosp.*, 637 S.W.2d 123, 125 (Mo.App.E.D.1982). Here, we find the action of the court is supported by the first, third, and fourth grounds.

In *Mahan v. Missouri Pac. R.R. Co.*, 760 S.W.2d 510, 513 (Mo.App.E.D.1988), we stated that the doctrine of res ipsa loquitur permits a jury to infer negligence without proof of specific negligence. The inference is permitted "when (1) the incident resulting in injury is of the kind which ordinarily does not occur without someone's negligence; (2) the incident is caused by an instrumentality under the control of the defendant; and (3) the defendant has superior knowledge about the cause of the incident." *Id.*

■ The second element, control, focuses on the defendant as the possible negligent actor. "As in any case of negligence, in order to make a submissible case, the plaintiff must show that it was more probable than not that the defendant was the cause of the negligence." *Id.* When the defendant does not have exclusive control of the instrumentality, "the inference that the defendant's negligence caused the accident does not necessarily follow." *Id.* In such a situation, a plaintiff must produce additional evidence to show the defendant's responsibility. *Id.*

■ Plaintiff contends that it was not required "to prove the specific manner of negligence" of the YMCA. It is true that a plaintiff, in a res ipsa case, need not ex-

clude every possible source of the negligence except that of the defendant. *Id.* A plaintiff, however, "must show that it was more probable than not that the defendant was the source of the negligence. [citation omitted]. When the plaintiff simply shows it was at least equally probable that the negligence was due to another, the plaintiff has not made a submissible case." *Id.*

Here, plaintiff did not show that the incident was "caused by an instrumentality" under the YMCA's control. For, although water caused plaintiff's damages, the source (instrumentality) of that water is not established. Further, the plaintiff did not "show that it was more probable than not that the defendant was the source of the negligence." The evidence discloses that it was at least equally probable that the negligence was due to another.

The evidence that the YMCA owned the whirlpool, water was in the whirlpool, and Hamer (an employee of the YMCA) did the work necessary to drain the whirlpool is some evidence that defendant was the source of the negligence. On the other hand, there is evidence pointing away from negligence on the part of the YMCA: (1) Martial Arts' employees and students used the rest rooms, lockers, dressing room, and showers adjacent to the whirlpool; (2) Rallo contacted Hamer to drain the whirlpool because of the stench in the area used by Martial Arts; (3) when Hamer and Rallo left the building, Rallo could still hear the water draining; and (4) the water in the whirlpool "stunk," while the water causing damage had no odor.

There is further evidence that makes it "at least equally probable that the negligence was due to another." Rallo testified that Hamer did not use any hose or put any more water into the whirlpool to clean it out; "there was no water going in, only water going out." Yet, it is undisputed that the water which caused plaintiff's damages had no odor or scum, i.e. it was clean water. Because "there was no odor" to that water, it occurred to Rallo that the water did not come from the whirlpool.

There is evidence that both Hamer and Rallo had keys to the building. There is no evidence, however, that after leaving the building that night, either Hamer or Rallo returned. Yet, somehow between 6:15 and 6:30 p.m. February 6, and 10:00 a.m. February 7, clean water covered much of the floor in the whirlpool/dressing/shower area, as well as plaintiff's warehouse.

It would be pure speculation to say that either Hamer or Rallo returned to the building that night and turned the water on. Rallo's incentive to return to rid the dressing area of the stench for his students would be at least equal to Hamer's incentive to assist Rallo in reaching that goal. Thus, such speculation, even if allowed, would not aid plaintiff in showing "that it was more probable than not that the [YMCA] was the source of the negligence." To make its case, plaintiff "must remove it from the field of conjecture and doubt and establish it by substantial evidence of probative value." *Johnston v. Sel–Mor Garment Co.,* 571 S.W.2d 691, 693 (Mo.App.E.D.1978). Such evidence is lacking.

As to whether the "instrumentality" which caused plaintiff's damages was under the YMCA's control, Neuman testified that there was nothing about the whirlpool that indicated that the water had somehow leaked out of the whirlpool. Finally, Rallo said that he had "no idea" where the water on the floors came from.

From what has been said, it is clear that the trial court did not err in granting the judgment notwithstanding the verdict. The judgment is affirmed.

SATZ, P.J., and SMITH, J., concur.