**Donald GRUS, Plaintiff–Appellant,**

v.

**Donald PATTON, d/b/a Patton Bros. Tractor and Nursery, Defendant–Respondent.**

**No. 57451.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 5, 1990.

David L. Baylard, Union, for plaintiff-appellant.

Nicholas G. Gasaway, Jr., Union, for defendant-respondent.

JOSEPH J. SIMEONE, Senior Judge.

This is an appeal from an order and judgment entered on September 5, 1989 by the Circuit Court of Franklin County dismissing the plaintiff-appellant's four count amended petition to recover damages for an allegedly defective tractor which was purchased for $27,800 from respondent, Donald Patton, d/b/a Patton Brothers Tractor & Nursery Co. Two counts of the petition were dismissed because appellant's action was not filed within the applicable statute of limitations and two counts were dismissed for failure to state a claim upon which relief can be granted. We affirm.

On January 22, 1980, appellant, Donald Grus, entered into a written contract with Patton Tractor and Implement Company for the purchase of a Deutz farm tractor for $27,800. After a "limited" use of the tractor, Grus started to experience "numerous problems." His petition alleged that the air conditioner did not work, the tractor did not start, the "heads" leaked, and the steering did not work. After experiencing these problems, Grus notified Patton of the problems and Patton "attempted to correct said problems during each calendar year following the purchase through 1988, but was unable to do so...." As a result of these defects, Grus alleged he suffered damages. On February 22, 1988, an attorney for Grus wrote to Patton, stating that numerous problems were encountered with the tractor, and that Mr. Grus elected to revoke his acceptance of the tractor pursuant to § 400.2–608 of the Uniform Commercial Code.

Grus then filed an original petition for $37,800 damages on August 23, 1988, over eight years after the purchase. The petition was in two counts: (1) revocation of acceptance of goods pursuant to the UCC, § 400.2–608, R.S.Mo., 1986, and (2) breach of implied warranty of merchantability pursuant to the UCC, § 400.2–314. After a motion to dismiss and an answer was filed, Grus was given leave to file an amended petition. On August 1, 1989, Grus' amended petition was filed. The amended petition is in four counts. Count I pleaded the theory of revocation of acceptance, pursuant to § 400.2–608, R.S.Mo.; Count II pleaded a tort theory of "negligent repair" alleging that Patton "negligently performed" repairs and did not use that "degree of care which an ordinarily careful and prudent person should have used;" Count III pleaded the theory of *res ipsa loquitur* alleging that Patton "had control of the tractor during the time the repairs were performed"; and Count IV alleged breach of implied warranty of merchanta-

bility, rendering the tractor unfit for general farm use.

On August 24, 1989, Patton moved to dismiss pursuant to Rule 55.27, contending that Counts I and IV were barred by the four-year statute of limitations embodied in § 400.2–725,[1] that Count II does not state a claim because Grus has "no cause of action" for "negligent repair," in that Patton's liability, if any, for defective repair is based either on breach of contract or warranty, not tort, or because plaintiff pleaded generally, not specifically; and that Count III fails to state a claim because all the elements of *res ipsa* are not satisfied under the facts, and the doctrine is "simply not applicable."

On September 5, 1989, the court sustained the respondent's motion to dismiss the first amended petition. The appellant elected to stand on his amended petition, and in due time, Mr. Grus appealed.

On appeal, appellant contends that the trial court erred in sustaining the motion to dismiss Count I because § 400.2–725 applies only to actions for breach of a contract for sale and not to a revocation of acceptance under § 400.2–608, which allows revocation of acceptance "within a reasonable time" after the buyer discovers or should have discovered the ground for revocation, and for the reason that Patton's acts and representations estop it from asserting the statute of limitations. He also contends that the court erred in dismissing Count II because the allegations are sufficient to state a claim, and erred as to Count III because Count III states a claim under the *res ipsa* doctrine. As to Count IV, appellant contends the court erred in dismissing Count IV because Patton's acts and representations estop it from asserting the four-year statute of limitations as a defense.

As to Count II, appellant argues that his petition states a claim in "negligent repair," a tort, not contract, and he relies on *Sharp Bros. v. American Hoist and Der-*

**1.** Section 400.2–725, R.S.Mo.1986 provides: "(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.... (2) A cause of action accrues when the breach occurs regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made...."

*rick Co.,* 714 S.W.2d 919 (Mo.App.1986), wherein the Western District held that where defendant pleaded negligent design and the manufacturer "undertook to devise, recommend and direct modifications" of a crane and did so negligently, the petition pleaded a claim in negligent repair which was not barred by § 400.2–725.

Respondent, *inter alia* contends that the court did not err in denying Grus leave to file any further amended petitions because no request to do so was made and Grus elected to stand on the allegations of the first amended petition.

Since this appeal emanates from a judgment of the trial court dismissing plaintiff's petition because of the statute of limitations and for failure to state a claim upon which relief may be granted, we must view the petition liberally and favorably to the plaintiff, giving him the benefit of all inferences fairly deducible from the facts stated, and assume that all the facts alleged are true. Further, the petition is to be liberally construed so as to obtain substantial justice. If the alleged facts and inferences, viewed most favorable to the plaintiff, show any grounds for relief, the petition is not to be dismissed. *Sharp Bros. v. American Hoist & Derrick Co., supra,* 714 S.W.2d at 921; *Burckhardt v. General Am. Life Ins. Co.,* 534 S.W.2d 57, 63 (Mo.App.1976); *Lowrey v. Horvath,* 689 S.W.2d 625, 626 (Mo. banc 1985); *Shapiro v. Columbia Union National Bank and Trust Co.,* 576 S.W.2d 310, 312 (Mo. banc 1978).

■ Initially, appellant contends that the trial court should have treated the motion to dismiss as one for summary judgment under Rule 74.04, since matters outside the pleadings—statute of limitations—were presented to and not excluded by the trial court. Hence, appellant argues, there were genuine issues of fact—e.g., the determination of "reasonable time" for his revocation of acceptance—to be determined so that the court erred in sustaining the motion to dismiss. *Cf., Black Leaf Products Co. v. Chemisco, Inc.,* 678 S.W.2d 827, 829 (Mo.App.1984). But, contrary to appellant's contention, this is not a proceeding in summary judgment. It has long been held that a motion to dismiss is a proper motion to attack the petition on the ground that the action is barred by the statute of limitations, especially when the expiration of the limitation appears on the face of the petition. *Baysinger v. Hanser,* 355 Mo. 1042, 199 S.W.2d 644, 646 (Mo.App.1947); *Follmer's Market, Inc. v. Comprehensive Accounting Service Co.,* 608 S.W.2d 457, 458 (Mo.App.1980); *Zero Mfg. Co. v. Husch,* 743 S.W.2d 439, 441 (Mo.App.1987). Under the circumstances, the trial court properly ruled on the motion to dismiss and was not in error in failing to treat the motion as one for summary judgment.

■ We turn to the merits. As to Counts I and IV, it is clear that these counts are time barred. A revocation of acceptance under § 400.2–608 must be made within a "reasonable time" after the buyer discovers the ground for revocation. An action for breach of any contract of sale alleged in Count IV is barred upon the expiration of the four year limitation period. Section 400.2–725. Although the relationship between § 400.2–608 and § 400.2–725 is not entirely clear, our decisions are uniform in holding that a revocation of acceptance or recission must be made long before the expiration of four years. No decision has held that a revocation of acceptance may be made after such period. Recently, we reviewed the decisions construing § 400.2–608 in *Ford Motor Credit Co. v. Mellor,* 748 S.W.2d 410 (Mo.App.1988). There, the purchaser of an automobile sought to revoke acceptance after seventeen months from the date of purchase and after numerous problems were found with a vehicle. We held, as a matter of law, that the use of a vehicle for seventeen months deprived the purchaser of the right to revoke acceptance. We also reviewed previous decisions. *Fitzgerald v. Donn Darr Ford, Inc.,* 729 S.W.2d 256 (Mo.App.1987)—purchaser not entitled to rescind after little more than a year; *Bryant v. Prenger,* 717 S.W.2d 242 (Mo. App.1986)—use of automobile for six months and 12,000 miles after buyer discovered the automobile's nonconformity

with representation made at time of sale held to nullify buyer's right of revocation; *General Motors Acceptance Corp. v. Dieckmann,* 675 S.W.2d 469 (Mo.App.1984)—trial court's finding that nineteen months after purchase, attempted revocation not seasonable. In *Fitzgerald, supra,* while we recognized that the determination of whether a rescission is reasonable is a question of fact, situations can exist where reasonable persons cannot disagree that rescission is untimely. A little more than a year was held to be not timely, as a matter of law.

■ Count IV is clearly an action based upon the contract of sale for breach of the implied warranty of merchantability and is time barred by the operation of § 400.2–725. 1. J. White & R. Summers, *Uniform Commercial Code,* § 11–9 (3rd ed. 1988); annot., 20 A.L.R. 4th 915 (1983). Appellant admits as much but contends that the allegation in the petition that respondent attempted to correct the problems during "each calendar year" from 1980 to 1988, "estops" it from asserting the statute of limitations embodied in § 400.2–725. Estoppel is not applicable. Estoppel was not pleaded. Rule 55.08; *Phipps v. Shelter Mut. Ins. Co.,* 715 S.W.2d 930, 934 (Mo.App.1986). The elements of estoppel are not present, *Peerless Supply Co. v. Industrial Plumb. & Heat. Co.,* 460 S.W.2d 651, 665–666 (Mo.1970); *Mo. Highway & Transp. Com'n v. Myers,* 785 S.W.2d 70, 73 (Mo. banc 1990). The allegations attempting to support estoppel are not absolute and unequivocal; and the repairs are susceptible of two constructions which do not constitute estoppel. *Neal v. Laclede Gas Company,* 517 S.W.2d 716, 719 (Mo.App.1974). Furthermore, the great majority of decisions hold that attempts to make repairs, or actual repairs of a chattel, which allegedly do not comply with a warranty do not toll a statute of limitations applicable to an action for breach of warranty. Courts do not read into statutes of limitation an exception which is not embodied therein. *See* cases collected in annot., *Repairs as Tolling Statute of Limitations,* 68 A.L.R. 1277 (1976); *Triangle Underwriters, Inc. v.*

*Honeywell, Inc.,* 604 F.2d 737, 26 UCCRS 1162 (2nd Cir.1979).

Therefore the trial court did not err in dismissing Counts I and IV.

Neither did the court err in sustaining the motion to dismiss as to Count III—*res ipsa loquitur.* Appellant contends that the doctrine is applicable because the tractor was under the control of the respondent when it made the numerous repairs and therefore possessed superior knowledge or means of information as to the cause of the unsuccessful repairs causing damage.

■ *Res ipsa loquitur* is a doctrine based on circumstantial evidence. The principle "permits" a jury to "infer" (not presume) negligence without proof of specific negligent conduct. The inference of negligence is permitted when (1) the "incident," "event," or "accident" resulting in injury is of the kind which ordinarily does not occur without someone's negligence; (2) the "incident" is caused by an "instrumentability" under the control of the defendant; and (3) the defendant has superior knowledge about the cause of the "accident." *Mahan v. Missouri Pacific R. Co.,* 760 S.W.2d 510, 513 (Mo.App.1988); *Marshall Interiors, Inc. v. Young Men's Christian Association of Greater St. Louis,* 787 S.W.2d 329 (Mo.App.1990); *McCloskey v. Koplar,* 329 Mo. 527, 46 S.W.2d 557, 559 (Mo. banc 1932); *Carter v. Liberty Equipment Co., Inc.,* 611 S.W.2d 311, 314 (Mo. App.1981). The doctrine has been applied in many types of situations—*Carter, supra,*—air compressor towed by vehicle became detached from truck and collided with building striking plaintiff inside building; *see* W. Prosser & W.P. Keeton, *Torts,* at 245 (5th ed.1984). The doctrine is normally applicable where the "event," "accident" or "occurrence" is an "unusual" one, although many "accidents" are not unusual. *Prosser, supra,* at 246.

■ We believe that the circumstances here do not give rise to the doctrine of *res ipsa loquitur* and that the essential elements of the doctrine are not present. The doctrine is simply not appropriate to the circumstances. This is an ordinary case

involving repairs to a tractor which allegedly was defective. There is no unusual, event, accident or occurrence giving rise to an injury or to an inference of negligence. *See Prosser, supra,* at 244. The mere fact that respondent had control of the tractor at the time of making the repairs and may have had some superior knowledge of what repairs were made does not make the doctrine applicable. Alleged repairs of a vehicle which is allegedly defective made by the seller while under the seller's "control" do not give rise to the doctrine of *res ipsa loquitur.*

Appellant obliquely contends that his petition also states a claim in "general negligence" as well as *res ipsa loquitur.* General negligence and *res ipsa loquitur* have often been used interchangeably by the courts, but there is a substantial difference between the two terms. Although the doctrine of *res ipsa* may be inapplicable because of the absence of one or more elements, a petition may well state a claim in general or "circumstantial" evidence. *First Baptist Church of Jefferson City v. Bybee Church Organs,* 789 S.W.2d 829 (1990). The distinction is made in the exploding bottle cases. *Maybach v. Falstaff Brewing Corp.,* 359 Mo. 446, 222 S.W.2d 87 (1949). In *Maybach,* plaintiff was injured by the explosion of two bottles which she was removing from a shelf in a grocery store. The Supreme Court held that this was not a proper case for *res ipsa* since the element of control was missing, and since the bottles had been out of the control of the brewery for days. Despite the fact that *res ipsa* was inapplicable, the court held that a submissible case was made and that the petition alleging certain acts on the part of the bottler and characterizing those acts as negligence was sufficient to state a claim in "general negligence." While plaintiff could not submit the case under the *res ipsa* rule, "that does not affect the sufficiency of the petition as a general charge of negligence." 222 S.W.2d at 91; *see also, Plato Reorg. Sch. D. No. R–5 v. Intercounty Elec. Coop. A.,* 425 S.W.2d 914 (Mo.1968)—fire occurred after installation of electrical equipment; petition stated claim in *res ipsa* and general negligence, and *First Baptist Church, supra,* discussing *Maybach* and *Plato.*

But appellant's petition here did not allege general negligence. Count III attempts to state only a claim in *res ipsa* alleging control. Count III does not state, although it does in Count II, the particular act or acts of the defendant and does not characterize those acts as negligent—a requisite for pleading general negligence. All that appellant states is that the respondent sold farm implements, plaintiff purchased a tractor, there were warranties, the price paid, the problems which developed and respondent had control of the tractor at the time the repairs were performed. These allegations are insufficient to state general negligence.

Since the petition did not state a claim in *res ipsa* or in general negligence, the court did not err in dismissing Count III.

The dismissal of Count II, negligent repair, is not easily resolved. It raises many complex issues involving the relationship between contract and tort. The issue to be resolved is whether, upon a sale and purchase of a chattel which later reveals alleged defects, and upon which repairs are attempted, the plaintiff may maintain an action in tort for negligent repair as well as for breach of contract or for implied warranty.

■ Dean Prosser has written that "[t]he relationship between the remedies in contract and tort presents a very confusing field, still in the process of development, in which few courts have made any attempt to chart a path." W. Prosser, *Torts,* § 92 at 613 (4th ed. 1971). The remedy of contract arose out of the tort of malfeasance and misfeasance. Eventually nonfeasance was held to be a breach of contract. *See* Ames, *The History of Assumpsit,* 2 Harv. L.Rev. 1 (1888). The fundamental difference between tort and contract lies in the nature of the interest to be protected. "Tort actions are created to protect the interest in freedom from various kinds of harms. The duties of conduct which give rise to them are imposed by law, and are

based primarily on social policy, and not necessarily upon the will or intention of the parties.... Contract actions are created to protect the interest in having promises performed. Contract obligations are imposed because of conduct of the parties manifesting consent and are owed only to specific individuals named in the contract." *Prosser, supra*, at 613.

In *State v. Eversole*, 332 S.W.2d 53, 57–58 (Mo.App.1960), this court discussed the relationship:

In order to determine the character of the action, whether ex contractu or ex delicto, it is necessary to ascertain the source of the duty claimed to have been violated. If this duty is one imposed merely by the contract, then any action for the breach thereof is necessarily ex contractu ... On the other hand, if a party sues for breach of duty prescribed by law as an incident of the relation or status which the parties have created by their agreement, the action may be one in tort, even though the breach of duty may also be a violation of the terms of the contract.

In *Eversole*, the issue was one of proper venue. Plaintiff brought an action against a Diesel sales company. Plaintiff was a resident of Jefferson County, and the Diesel company had its principal office in the City of St. Louis. The defendant had sold to plaintiff a diesel engine and agreed to repair it, but due to improper and negligent work, the oil system failed and the engine burned out causing damage to the plaintiff. The issue was whether there was venue in Jefferson County. This court held not, and said that the breach of duty arose under the contract concerning the repair of the engine and was not a breach of duty imposed by law. "The failure to properly perform by defendant was a failure to discharge its agreement, and was solely a breach of contract ... and the fact that the acts constituting the breach of contract are alleged as negligently done does not change the situation." *Eversole*, 332 S.W.2d at 58.

In many situations involving the misfeasance of an attorney, physician, architect, common carrier, or loss of bailed goods, (*see Prosser, supra*, § 92 at 660 (5th ed. 1984)), the principle which "seems to have emerged from the decisions ... is that there will be liability in tort for misperformance of a contract whenever there would be liability for gratuitous performance without the contract—which is to say, whenever such misperformance involves a foreseeable risk of harm to the interests of the plaintiff." *Prosser, supra*, at 661; *see also, Lumber Products, Inc. v. Hiriart*, 255 So.2d 783, 787 (La.App.1971); Lussing & Ream, *Architect Liability*, 32 Defense 2, 3 (Apr. 1990).

■ While this court has stated that the "issues involved in negligence and in breach of warranty may overlap ... they are not congruent," and while we have held that a plaintiff who has sued in a "magistrate" court for negligent repair because his car "froze up," could not, on appeal, to the circuit court, amend his petition to plead breach of warranty, *McMahon v. Charles Schulze, Inc.*, 483 S.W.2d 666 (Mo. App.1972), we believe that when a vehicle is sold to a purchaser, and the buyer seeks to have certain repairs made to correct problems, and the repairs are not properly made, the sole remedy of the purchaser lies in contract, or breach of. warranty and not tort. The repairs, or attempted repairs, arise out of contract, rather than tort. In such situation the "misfeasance" arises out of contract so that any alleged deficient performance arises out of contract.

There may, however, be a situation where there is an express collateral undertaking or where the misfeasance or negligence causes damage which is wholly unrelated to, or independent of, the alleged defects sought to be repaired. In such situation, the remedy in tort then, may well lie for such express undertaking or independent, unrelated or collateral negligence.

■ To put the matter differently, whenever the conduct of the seller in making repairs creates a condition that is not in contemplation of the contract to repair, but goes beyond the performance of the contract or implied warranty to repair and creates a condition that is wholly unrelated

to, collateral, or independent of the contract, the remedy is in tort. But when the acts or conduct of the seller are in conformity with the contract, and the seller's duty is to repair, and properly perform in conformity with the contract or warranty, the negligent repair then arises out of the contract, and the remedy for improper or negligent repair is solely contract. The latter is the situation here. The alleged negligent repairs asserted in the petition arise out of the contract of sale. There is no allegation of unrelated, independent or collateral repairs negligently performed. Therefore, the remedy here is in contract not tort.

This distinction, we believe, is recognized in *Sharp Bros. v. American Hoist & Derrick Co., supra,* 714 S.W.2d 919, and *Pepsi Cola Bottling Co. v. Superior Burner Serv. Co.,* 427 P.2d 833 (Alaska 1967)—authorities relied upon by the appellant.

In *Sharp Bros., supra,* the Western District held that when a crane had been sold to plaintiff, the negligence pleaded in Count III—in that the defendant American Hoist negligently directed modifications to strengthen support structures to a crane, and undertook to make modifications—was not barred by the four year statute of limitations embodied in § 400.2-725. The court stated that:

> There is no suggestion that a cause of action based on this later conduct [under-taking to devise, recommend and direct modifications] by American was barred by any statute of limitations in fact. Whether the claim be in tort, as we have assumed, or in contract, the suit was timely filed as measured by the date when the repairs and modification were undertaken.... [T]he Count III allegations relate to other conduct and will depend on actual proof of negligence or lack of care.

714 S.W.2d at 922.

In *Pepsi Cola Bottling Co., supra,* the Supreme Court of Alaska held that the trial court did not err in refusing to give an instruction on implied warranty when the case was submitted on a negligence theory. Plaintiff sought recovery for damages to a boiler needed to furnish heat and steam to carry out its manufacturing operations. The boiler had been converted from oil-fired to natural gas. One day the boiler was not operating and defendant was requested to "check it and get it started." The boiler was refired but it was discovered that the boiler had no water and became overheated causing damage to the boiler for which plaintiff sued. The court had to determine whether plaintiff had the right to go to the jury on the "separate" cause of action for breach of an implied warranty. The Supreme Court of Alaska held that it did not have that right. The court noted that the duty of care in both implied warranty and tort is the same, so that the trial court did not err in refusing to instruct on the plaintiff's implied warranty claim. The court illustrated a difference between contract and tort:

> For illustration, take the contract of a carpenter to repair a house, the implication of his contract is that he will bring to the service reasonable skill, good faith, and diligence. * * * [S]uppose, he, by want of care or skill, destroys or wastes material, or makes repairs so unskillfully *as to damage other* portions of the house; this is tort for which the contract only furnished the occasion.

427 P.2d at 841–842.

This distinction is not present in the case at hand. In this case, there is no allegation of any independent, collateral, or unrelated negligence or carelessness. The allegations are that there were problems with the tractor in that it did not start, the heads leaked, the steering did not work, and that the respondent, Patton, negligently failed to repair the defects which were alleged and for which the tractor was taken in. Therefore, the remedy for damages for such attempted repairs lies solely in contract, or implied warranty and not in tort, and the trial court, therefore, did not err in sustaining the motion to dismiss as to Count III (negligent repair) for failure to state a claim upon which relief could be granted. *Cf., Grgic v. Cochran,* 689 S.W.2d 687, 690 (Mo.App.1985); *Neal v.*

*Laclede Gas Company*, 517 S.W.2d 716 (Mo.App.1974).

Considering the full aspects of this case, it is simply one in which Grus purchased a tractor in 1980, and although repairs were attempted over a considerable period of time, legal action was not taken until 1988 —over a period of eight years. Statutes of limitations are favored in the law and cannot be avoided unless a party seeking to avoid the salutary effects of the statute brings himself within some clear-cut exception or disability. To do so, strict compliance is required. Although repeated attempts were made to repair the tractor, and although it is alleged that attempts were made each year until legal action was taken, time must, at some point, run out. At some point in time, a period must be put on litigation. We believe that time has run out, and this action is barred by the statute of limitations embodied in § 400.2–705. *Cf. also,* § 407.560, R.S.Mo., 1986 (Lemon Law). Grus' remedy for failure to repair the alleged defects arising out of the contract or warranty was in contract or breach of implied warranty, and, despite the ingenuity of counsel to transform that remedy into one of tort, the court did not err in dismissing the petition because the action is barred by the doctrine of limitations and the petition fails to state a claim upon which relief could be granted.

Furthermore, at one time in the common law, as the history of assumpsit shows, contract tended to engulf tort. *See Ames, supra.* But the common law, through the English courts, halted that encroachment so that the remedies of contract and tort would not be identical. *See Lamine v. Dorrell,* 92 Eng.Rep. 303 (1705). Today, tort has a tendency to engulf contract. But, as under the common law, limitations on the remedy of tort should be imposed; otherwise, tort will engulf contract. The two remedies, while related, are not identical. The circumstances of this case show that each of the remedies should be kept within their proper bounds. Otherwise all remedies could be maintained under a tort theory.

We have read the entire legal file, the briefs of the parties, and the authorities relied upon, and conclude that the trial court did not err in sustaining the respondent's motion to dismiss the petition.

Judgment affirmed.

CARL R. GAERTNER, P.J., and STEPHAN, J., concur.