**Chug CRITES, d/b/a Crites Farms, Plaintiff/Appellant,**

v.

**DELTA–Y ELECTRIC CO., INC., Defendant/Respondent.**

No. 59927.

Missouri Court of Appeals, Eastern District, Southern Division.

Dec. 17, 1991.

---

Oliver, Oliver, Waltz & Cook, P.C., Jeffrey P. Hine, Cape Girardeau, for plaintiff/appellant.

John A. Layton, Cape Girardeau, for defendant/respondent.

KAROHL, Judge.

This lawsuit originated when Chug Crites, d/b/a Crites Farms, [Crites] filed a petition against Delta–Y Electric Co., Inc. [shipper] in small claims court alleging breach of contract for shipper's failure to pay Crites $958, plus late charges, for the transportation of an electric transformer from Patton, Missouri, to South Bend, Indiana. The transformer belonged to Indiana Michigan Power Company who sent it to shipper for repairs. Shipper counterclaimed for $5,106.20 in negligence on the theory of res ipsa loquitur, contending the transformer was damaged while in Crites' possession. The court entered judgment for shipper on both Crites' petition and shipper's counterclaim, in the amount of $4,148.20. Crites appeals from the judgment. He contends shipper failed to prove res ipsa loquitur. We agree.

Shipper presented its counterclaim to the trial court on a res ipsa loquitur theory. It defends the judgment on its counterclaim on that basis. We review the sufficiency of proof on that argument only.

The undisputed facts relevant to a decision on shipper's counterclaim are as follows. Shipper hired Crites to transport the electric transformer from shipper's business in Patton, Missouri, to the owner in South Bend, Indiana. The transformer was secured to a wooden pallet. It holds 365 gallons of oil. Shipper's employee, Dennis Mauser, loaded the transformer onto Crites' trailer with a crane and tightened it down with chains. On Friday, August 27, 1990, Freeman Siebert, a Crites' employee, picked up the transformer at shipper's plant in Patton. Siebert then drove the tractor-trailer loaded with the transformer to Crites' lot in Jackson, Missouri.

The following day, an employee of Crites unhooked the tractor from the trailer in order to switch tractors. The Crites employee also adjusted one of the chains used to secure the transformer to the trailer. He made a loop in the chain across the eye on top of the transformer and put the chain back. Then he put cardboard over the fins on the transformer in case the boomer came loose. He secured the boomers used to tighten the chain with a wire to keep them from unlatching. Mark Rutherford, the driver on the trip, backed a different tractor underneath the trailer with the transformer loaded on it, hooked it up and

checked the chains to make sure they were tight. He drove to South Bend on Sunday, leaving about five or six o'clock in the evening. The trip was over 400 miles.

Shipper's president, Dale Robinson, saw the trailer as Mark Rutherford was leaving town and the transformer appeared in satisfactory condition.

When Rutherford arrived in South Bend, he observed oil leaking down the side of the transformer from a cracked weld. A piece of steel brace had fallen off the transformer. The company to whom the transformer was being delivered refused to accept it because it was leaking. Crites instructed Rutherford to return the transformer to shipper's place of business.

Mauser and Robinson again observed the transformer after it was returned. There were scratches on the bottom of the radiator, cracks in the weld near where the radiator attached to the tank, support brackets were missing, and welds were broken around the radiator fins where they were mounted onto the main tank.

Shipper in its counterclaim sought damages in the amount of $5,106.20, representing the charges it would receive from the owner for repairing the transformer. At trial, Crites amended the petition to increase the amount of the prayer to $1,916.50, representing the cost for transporting the transformer to South Bend and for returning the transformer to Patton. This figure was based upon a charge of $2 per loaded mile. Shipper's president testified he did not "recall exactly" what the agreement was but he "thought it was slightly over $1 a mile."

■■■ Viewing all evidence most favorably to the judgment for shipper, shipper has not presented evidence sufficient to establish res ipsa loquitur. Res ipsa loquitur is a doctrine based upon circumstantial evidence. A fact finder may infer negligence without proof of specific negligence under this doctrine. *Mahan v. Missouri Pac. R.R. Co.*, 760 S.W.2d 510, 513 (Mo. App.1988). However, the inference arises only if the following are alleged and proven: "(1) the incident resulting in injury is of the kind which ordinarily does not occur without someone's negligence; (2) the incident is caused by an instrumentality under the control of the defendant; and (3) the defendant has superior knowledge about the cause of the incident." *Id.* Res ipsa loquitur will support a judgment only if all three elements of the doctrine are alleged and proven. *First Baptist v. Bybee Church Organs*, 789 S.W.2d 829, 831 (Mo. App.1990). All elements were not established in the present case and the circumstances here do not give rise to the doctrine.

■■■ First, res ipsa loquitur is normally applicable when the incident, event or accident is an unusual one. *Grus v. Patton*, 790 S.W.2d 936, 940 (Mo.App.1990). Here, there is no evidence of an unusual incident, event or accident giving rise to an injury or to an inference of negligence. Siebert testified the short trip from shipper's business to Crites' lot in Jackson, Missouri was uneventful. There were no accidents or sudden stops or swerves. Rutherford testified nothing unusual happened on his trip to South Bend.

Second, the element of control is missing. Although Crites transported the transformer, shipper also exercised control over the transformer when shipper's employee, Mauser, loaded the transformer onto Crites' trailer with a crane and secured it with chains. The mere fact shipper had possession of the transformer when delivering it to South Bend does not constitute exclusive control of the shipment at all times when some negligent act caused damage.

Third, there is no proof of causation for the leak. Hence, there is no evidence to support a finding Crites had superior knowledge about the cause, or in this case any knowledge of the cause.

It is clear the court credited Crites with a one-way shipping charge from Patton to South Bend. The judgment for shipper on the counterclaim is exactly the difference between the prayer on the counterclaim and the prayer on the Crites' original petition. However, there are disputed claims and facts on the shipping charges. We

remand for further proceedings on the petition.

The judgment on the counterclaim of Delta–Y Electric Co., Inc. is reversed. The judgment on the petition of Chug Crites, d/b/a Crites Farms, is reversed and remanded.

CARL R. GAERTNER, C.J., and AHRENS, J., concur.